UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

| | | |
|---|---|---|
| JAMES A. ZARRILLI, | ) | |
| | ) | |
| Plaintiff | ) | |
| | ) | |
| v. | ) | Civil No. 08-82-B-W |
| | ) | |
| MICHAEL J. ASTRUE, | ) | |
| Commissioner of Social Security, | ) | |
| | ) | |
| Defendant | ) | |

### REPORT AND RECOMMENDED DECISION[1]

In this Social Security Disability ("SSD") and Supplemental Security Income ("SSI") appeal, the plaintiff raises several arguments, including assertions that the administrative law judge's "implied finding" concerning substance abuse is not based on substantial evidence, that he failed to treat the opinions and assessments of two treating mental health professionals correctly, that he erroneously found that the plaintiff had no physical limitations, and that he erroneously failed to consider the side effects of the medications that the plaintiff was taking at the time of the hearing. Plaintiff's Itemized Statement of Errors ("Itemized Statement") (Docket No. 11) at 10-20. I recommend that the case be remanded for further proceedings.

In accordance with the commissioner's sequential evaluation procedure, 20 C.F.R. §§ 404.1520, 416.920; *Goodermote v. Secretary of Health & Human Servs.*, 690 F.2d 5, 6 (1st

---

[1] This action is properly brought under 42 U.S.C. §§ 405(g) and 1383(c). The commissioner has admitted that the plaintiff has exhausted his administrative remedies. The case is presented as a request for judicial review by the court pursuant to Local Rule 16.3(a)(2)(A), which requires the plaintiff to file an itemized statement of the specific errors upon which he seeks reversal of the commissioner's decision and to complete and file a fact sheet available at the Clerk's Office. Oral argument was held before me on October 17, 2008, pursuant to Local Rule 16.3(a)(2)(C) requiring the parties to set forth at oral argument their respective positions with citations to relevant statutes, regulations, case authority, and page references to the administrative record.

1

Cir. 1982), the administrative law judge found, in relevant part, that the plaintiff suffered from the impairments of anxiety, depression, and alcohol abuse, ailments that were severe and, when the substance abuse was included, met the criteria of Sections 12.04, 12.06, and 12.09 of Appendix 1 to Subpart P, 20 C.F.R. Part 404 (the "Listings"), Findings 3-4, Record at 15-16; that, "if the claimant stopped the substance use," his remaining impairments would not, alone or in combination, meet or medically equal the criteria of any impairment in the Listings, Finding 6, *id*. at 17; that "[i]f the claimant stopped the substance use," he would have had the residual functional capacity to perform a full range of work at all exertional levels, modified by the ability to maintain attention and concentration sufficient to understand, remember, and carry out simple and occasionally detailed job instructions, perform unskilled low stress work defined as requiring only occasional decision-making and occasional use of judgment, respond appropriately to occasional changes in the work setting, and interact occasionally with coworkers, supervisors, and the general public, Finding 7, *id*.; that "[i]f the claimant stopped the substance use," he would be unable to perform his past relevant work, Finding 8, *id*. at 22; that, given the plaintiff's age on the alleged onset date (42 years old, a younger individual), high school education plus one year of college courses, work experience, and residual functional capacity, and using the rules in Appendix 2 to Subpart P of 20 C.F.R. Part 404 (the "Grid") as a framework for decision-making, there would be a significant number of jobs in the national economy that the plaintiff could perform, Findings 9-12, *id*.; and that, "[b]ecause the claimant would not be disabled if he stopped the substance use," the plaintiff's substance use was a contributing factor to the determination of disability and therefore the plaintiff had not been disabled within the meaning of that term as it is used in the Social Security Act at any time from the alleged onset date through the date of the decision, Finding 13, *id*. at 23.  The Decision

Review Board affirmed the decision, *id.* at 2-4, making it the final decision of the commissioner, 20 C.F.R. § 405.420.

The standard of review of the commissioner's decision is whether the determination made is supported by substantial evidence. 42 U.S.C. §§ 405(g), 1383(c)(3); *Manso-Pizarro v. Secretary of Health & Human Servs.*, 76 F.3d 15, 16 (1st Cir. 1996). In other words, the determination must be supported by such relevant evidence as a reasonable mind might accept as adequate to support the conclusion drawn. *Richardson v. Perales,* 402 U.S. 389, 401 (1971); *Rodriguez v. Secretary of Health & Human Servs.*, 647 F.2d 218, 222 (1st Cir. 1981).

The administrative law judge reached Step 5 of the sequential evaluation process, at which stage the burden of proof shifts to the commissioner to show that a claimant can perform work other than his past relevant work. 20 C.F.R. §§ 404.1520(g, 416.920(g); *Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987); *Goodermote*, 690 F.2d at 7. The record must contain positive evidence in support of the commissioner's findings regarding the plaintiff's residual functional capacity to perform such other work. *Rosado v. Secretary of Health & Human Servs.*, 807 F.2d 292, 294 (1st Cir. 1986).

The plaintiff's arguments also implicate Step 2 of the sequential process. Although a claimant bears the burden of proof at this step, it is a *de minimis* burden, designed to do no more than screen out groundless claims. *McDonald v. Secretary of Health & Human Servs.,* 795 F.2d 1118, 1123 (1st Cir.1986). When a claimant produces evidence of an impairment, the commissioner may make a determination of non-disability at Step 2 only when the medical evidence "establishes only a slight abnormality or combination of slight abnormalities which would have no more than a minimal effect on an individual's ability to work even if the

3

individual's age, education, or work experience were specifically considered." *Id.* at 1124 (quoting Social Security Ruling 85-28).

### Discussion

On March 29, 1996, Congress enacted Pub.L. No. 104-121, eliminating drug or alcohol addiction as a basis for obtaining disability benefits. *See* Historical and Statutory Notes to 42 U.S.C. §§ 423, 1382c; *Jones v. Apfel,* 997 F.Supp. 1085, 1093 (N.D.Ind.1997). Under the new provision, "An individual shall not be considered to be disabled for purposes of this subchapter if alcoholism or drug addiction would (but for this subparagraph) be a contributing factor material to the Commissioner's determination that the individual is disabled." 42 U.S.C. §§ 423(d)(2)(C), 1382c(a)(3)(J).

Applicable Social Security regulations provide that:

> (1) The key factor we will examine in determining whether drug addiction or alcoholism is a contributing factor material to the determination of disability is whether we would still find you disabled if you stopped using drugs or alcohol.
>
> (2) In making this determination, we will evaluate which of your current physical and mental limitations, upon which we based our current disability determination, would remain if you stopped using drugs or alcohol and then determine whether any or all of your remaining limitations would be disabling.
>
> (i) If we determine that your remaining limitations would not be disabling, we will find that your drug addiction or alcoholism is a contributing factor material to the determination of disability.
>
> (ii) If we determine that your remaining limitations are disabling, you are disabled independent of your drug addiction or alcoholism and we will find that your drug addiction or alcoholism is not a contributing factor material to the determination of disability.

20 C.F.R. §§ 404.1535(b), 416.935(b). A claimant bears the burden of proving that drug or alcohol addiction is not a contributing factor material to his disability. *Brown v. Apfel,* 192 F.3d 492, 498 (5th Cir.1999); *accord Mittlestedt v. Apfel,* 204 F.3d 847, 852 (8th Cir.2000).

As the plaintiff points out, Itemized Statement at 11-12, the administrative law judge found the "[m]edical records demonstrate that the claimant's alcohol abuse has been in remission since September or October, 2006," Record at 19, yet he also found that "the claimant's substance use disorder[] is a contributing factor material to the determination of disability" and "[t]hus, the claimant has not been disabled . . . at any time from the alleged onset date through the date of this decision." *Id*. at 23. The word "remission" means "[t]he state or period in which something, as a disease's symptoms, is remitted," and to remit means "[t]o restore to an original state." *Webster's II New Riverside University Dictionary* (1984) at 994. Alcohol abuse that is in remission is no longer exhibiting symptoms. The two quoted findings by the administrative law judge cannot be reconciled. Even if the administrative law judge meant to indicate that the plaintiff's substance abuse disqualified him from an award of benefits as of the date he alleged that his disability began, May 30, 2006, Record at 12, his finding that that the plaintiff's substance abuse was in remission as of September or October, 2006, renders invalid his conclusion that the substance abuse disqualified the plaintiff "through the date of [the administrative law judge's] decision," October 15, 2007. *Id*. at 24.[2]

This error does not necessarily require remand, however, because the administrative law judge also found that "[i]f the claimant stopped the substance use, . . . there would be a significant number of jobs in the national economy" that he could perform, *id*. at 22, a

---

[2] If the administrative law judge meant that the plaintiff's "brief relapse in March and April, 2007" and his continuing "to drink a few beers 'here and there,'" Record at 19, indicated that his remission had ended, this should have been stated explicitly in his decision for purposes of the applicable regulation. That conclusion does not necessarily follow from those observations.

conclusion drawn at Step 5 of the sequential evaluation process to the effect that the plaintiff did not qualify for benefits independent of the state of his substance abuse. In that regard, the plaintiff contends that the administrative law judge wrongly disregarded the opinions and assessments of two mental health professionals who were treating him. Itemized Statement at 13-16.[3]

Specifically, the plaintiff relies on the reports and questionnaires completed by Lisa Jacobs, a mental health nurse practitioner, and Sarah Roy, a licensed social worker. *Id*. at 13. Of Ms. Roy, the administrative law judge said:

> Little weight has been given to the September 18, 2007, opinion of Sarah Roy, L.S.W., that the claimant has no useful ability to maintain attention for two hour segments, and to complete a normal workday or workweek without interruptions from psychologically based symptoms, or perform at a consistent pace without an unreasonable number or length of rest periods, and is unable to meet the competitive standards with respect to understanding, remembering, and carrying out detailed instructions; dealing with the stress of semiskilled and skilled work; interacting appropriately with the general public; traveling in unfamiliar places; accepting instructions and responding appropriately to criticism from supervisors; getting along with coworkers or peers without unduly distracting them or exhibiting behavioral extremes; making simple work related decisions; working in coordination with or proximity to others without being unduly distracted; sustaining an ordinary routine without special supervision; maintaining regular attendance and being punctual within customary tolerance; responding appropriately to changes in a routine work setting; and dealing with normal hazards and taking appropriate precautions (Exhibit 26F). The undersigned finds this degree of limitation is not supported by or consistent with the objective evidence of record which shows that the claimant's symptoms improved once he stopped abusing alcohol.

*Id*. at 21. Of Ms. Jacobs, the administrative law judge says nothing at all.[4]

---

[3] The plaintiff devotes considerable time and effort to a discussion of the role of opinions from professionals who treat claimants but are not recognized by Social Security regulations as "acceptable medical sources," like Ms. Roy and Ms. Jacobs, Itemized Statement at 13-14, but I do not read the decision to reject or discount the opinions of these two professionals on the basis of their status as non-medical sources.

[4] Counsel for the commissioner correctly pointed out at oral argument that the administrative law judge cited to Exhibit No. 25F, the Mental Residual Functional Capacity Questionnaire partially completed by Jacobs. Record at 19-20, 461. Some of the points for which it is cited by the administrative law judge do not appear to be supported

Ms. Roy had been seeing the plaintiff for 4½ hours per week for eleven months when she filled out a Mental Residual Functional Capacity Questionnaire and wrote a cover letter for it on September 19, 2007. *Id.* at 466-71. Ms. Jacobs had been seeing the plaintiff every 3 to 4 weeks for a year when she filled out the same form on September 7, 2007, *id.* at 461-65, although she unhelpfully wrote "see treatment notes," *id.* at 463, rather than responding to specific questions about the plaintiff's mental abilities and aptitudes for unskilled work.

Social Security Ruling 06-03p, cited by the plaintiff in this regard, Itemized Statement at 14, does state:

> Since there is a requirement to consider all relevant evidence in an individual's case record, the case record should reflect the consideration of opinions from medical sources who are not "acceptable medical sources" and form "non-medical sources" who have seen the claimant in their professional capacity. Although there is a distinction between what an adjudicator must consider and what the adjudicator must explain in the disability determination or decision, the adjudicator generally should explain the weight given to opinions from these "other sources," or otherwise ensure that the discussion of the evidence in the determination or decision allows a claimant or subsequent reviewer to follow the adjudicator's reasoning, when such opinions may have an effect on the outcome of the case.

Social Security Ruling 06-03p ("SSR 06-03p"), reprinted in *West's Social Security Reporting Service* Rulings (Supp. 2008), at 333.

The administrative law judge failed to comply with this directive with respect to Ms. Jacobs' records, but her failure to complete the most important part of the questionnaire makes it difficult if not impossible to know whether this omission is a harmless error or instead requires remand as the plaintiff contends. In any event, it is not the role of this court to delve into Ms. Jacobs' treatment notes in order to discern what her opinion on those crucial questions might be.

---

by the questionnaire, and, in any event, there is no discussion of Ms. Jacobs as a treating professional. The questionnaire, in each instance, merely appears in a string of citations to many exhibits. Exhibit 24F, which counsel for the commissioner described as Ms. Jacobs' notes, is in fact the notes of John L. Hillman-Waters. Record at 455.

The plaintiff's itemized statement does not provide any guidance on this point. Under these circumstances, the administrative law judge's failure to address Ms. Jacob's unknown opinions cannot provide the basis for remand.

With respect to Ms. Roy's opinions, the plaintiff contends that, had the administrative law judge "properly addressed" them (that is, adopted them) "a finding of disability is warranted." Itemized Statement at 16. But the administrative law judge was not required to adopt Ms. Roy's opinions. The plaintiff contends that SSR 06-03p requires an administrative law judge to apply the factors set forth in 20 C.F.R. § 416.927(d) to Ms. Roy's opinions, *id.* at 14, 15, but that is not quite accurate. Ms. Roy and Ms. Jacobs are considered non-medical sources, to whom SSR 06-03p says the section 416.927(d) factors "can be applied." SSR 06-03p at 329, 331. More importantly for present purposes is the fact that the administrative law judge, while he did not specifically enumerate the section 416.927(d) factors, gave an extensive explanation of the evidence that he found to conflict with Ms. Roy's opinions. Record at 19-21. He found particularly worthy of reliance the opinion of the state-agency psychiatrist who reviewed the plaintiff's medical records in January 2007. *Id.* at 21, 404-14. In the absence of substance abuse, the psychiatrist found only moderate and mild limitations on the plaintiff's ability to perform mental work-related activities. *Id.* at 407-09. The plaintiff has not established his entitlement to remand on the basis of the administrative law judge's treatment of Ms. Roy's opinions. *See also Arruda v. Barnhart*, 314 F.Supp.2d 52, 72 (D. Mass. 2004) (citing authority for proposition that reliability of functional capacity reports unaccompanied by written reports is "suspect").

The plaintiff next contends that the administrative law judge erred in finding that none of his alleged physical impairments was severe. This is a determination made at Step 2 of the

sequential evaluation process. Specifically, the plaintiff contends that the administrative law judge's analysis failed to comply with Social Security Ruling 96-8p. He points to his repeated complaints of pain resulting from "extreme lower back pain, compressed disc in upper back, neuropathy in both legs, and polyneuropathy." Itemized Statement at 17. He argues that the administrative law judge's conclusion that these complaints were not supported by the medical evidence, Record at 15-16, "is not based on substantial evidence." Itemized Statement at 18.

The plaintiff points to record evidence that he says supports his claims in an EMG study and CT scan showing polyneuropathy of the lower extremities,[5] a rib fracture, mild compression of one of the midthoracic vertebral bodies, and a degenerative bulging disc at L5-S1. *Id*. at 18. The plaintiff does not explain how "cortical atrophy" shown in a CT scan of his head supports any of his physical claims,[6] and the court cannot interpret raw medical evidence. I will not consider this entry in the medical records further. I see no evidence that the rib fracture will cause symptoms for more than 12 months, a basic requirement for a finding that an impairment is severe. 20 C.F.R. §§ 404.1509, 416.909. Counsel for the plaintiff conceded at oral argument that the plaintiff could not claim that the rib fracture was a severe impairment.

The degenerative disc at L5-S1 is described as "minimally bulging," Record at 444, and, in the absence of some medical interpretation of this raw medical evidence, I cannot conclude that this report is evidence of a severe impairment. The same is true of the "[m]ild compression of one of the midthoracic vertebral bodies" seen on a January 4, 2006 x-ray. *Id*. at 250. On the showing made, I cannot assess whether these conditions would have more than a minimal effect

---

[5] One of the medical records cited by the plaintiff records that his neuropathy is "probably alcohol-related with his history." Record at 244.
[6] At oral argument, counsel for the plaintiff asserted that the plaintiff's treating physician had said that the cortical atrophy was a severe impairment, but provided no citation to the record in support of this statement. I see no such entry in the medical records of the physician who reported this observation; in fact, he merely recommended "intensive PT, OT 2-3 times a day" for an indefinite period. Record at 215.

9

on the plaintiff's ability to work. *Burgos-Santiago v. Secretary of Health & Human Servs.*, 960 F.2d 143 (table), 1992 WL 44806 (1st Cir. Mar. 11, 1992), at *1. The burden of proof remains with the plaintiff at Step 2.

The polyneuropathy remains to be considered next. The plaintiff points to a diagnosis made on January 21, 2005. *Id.* at 214. The word is defined as "[a] nontraumatic generalized disorder of peripheral nerves . . . typically symmetrically; most often affects motor and sensory fibers almost equally." *Stedman's Medical Dictionary* (27th ed. 1995) at 1422. This definition does not support an inference that the mere diagnosis necessarily means that the disorder is severe within the Social Security definition, but, giving the plaintiff the benefit of that doubt, the administrative law judge relied on medical evidence that the plaintiff

> has remained neurologically intact on examinations, and medical records fail to document limitation of motion, muscle spasms, scoliosis, atrophy, joint swelling, effusion, crepitus, positive straight leg raising tests, antalgic gait, objectively decreased strength, or object[ive] findings of motor, sensory, or reflex loss (Exhibits 3F, 7F, 8F, 12F, 20F, 22F, and 23F). A magnetic resonance imaging study of the lumbar spine in June, 2007, revealed only minimal disc bulging without neural compromise at the L5-S1 level, and radiographic studies in January, 2006, showed only mild compression of one of the mid thoracic vertebral bodies (Exhibits 5F, and 21F).
>
> While the claimant has recently been prescribed the anti-inflammatory medication Naprozen (Exhibit 11E), he has not been prescribed narcotic pain medications, and prior to May, 2007, was taking only over-the-counter Ibuprofen for his allegedly disabling pain (Exhibits 7E, 8F, and 12F). The evidence of record fails to demonstrate that the claimant has ever sought, required, or received alternate treatment modalities. He does not require assistive devices to ambulate. Despite claims of ongoing chronic pain, examiners noted that he did not present any outward effects of this in July, 2006 (Exhibit 6F). Furthermore, Mary Jude, F.N.P., found "nothing of significance" on physical examination on September 9, 2006 (Exhibit 8F).

*Id.* at 16. Much of this evidence post-dates the EMG study and diagnosis of polyneuropathy on which the plaintiff relies, and the administrative law judge was entitled to rely on it, particularly

in the absence of any indication in the medical records that the condition was likely to cause a physical impairment for more than 12 months.[7]

Contrary to the plaintiff's assertion, Itemized Statement at 17, Social Security Ruling 96-8p does not state that a finding that a claimant has no physical functional limitations may only be made where "there is no allegation of a physical or mental limitation or restriction of a specific functional capacity, and no information in the case record that there is such a limitation or restriction." No claimant is going to apply for benefits without alleging that he or she has a physical or mental limitation or restriction of a specific functional capacity. Social Security Ruling 96-8p in fact uses that language to indicate the circumstances under which an adjudicator *must* find that is "no limitation or restriction *with respect to that functional capacity*," a very different and much more limited set of circumstances not present here. Social Security Ruling 96-8p, reprinted in *West's Social Security Reporting Service* Rulings (Supp. 2008), at 143 (emphasis added).

Finally, the plaintiff contends that the administrative law judge wrongly rejected his complaints of side effects from his medications: dizziness, drowsiness, fatigue, lethargy, and upset stomach. Itemized Statement at 18-20. The administrative law judge addressed this issue briefly:

> While the claimant has recently complained of dizziness, drowsiness, fatigue, lethargy, and upset stomach as a result of his medications (Exhibits 25F, and 26F), he indicated in disability reports that he had no adverse side effects from his medications (Exhibit 7E).

Record at 20.

---

[7] The administrative law judge was also entitled to reject the terse 2005 opinion of Dr. Alan Waronker, on which the plaintiff also relies, Itemized Statement at 18, for the reasons given: that Dr. Waronker saw the plaintiff only once and appeared to base his opinion on the claimant's subjective reports rather than objective findings. Record at 21. *See* 20 C.F.R. §§ 404.1529(a), 416.929(a) "[S]tatements about your pain or other symptoms will not alone establish that you are disabled; there must be medical signs and laboratory findings which show that you have a medical impairment(s) which could reasonably be expected to produce the pain or other symptoms alleged . . . .").

Social Security regulations require consideration of the side effects of medication in evaluating a claimant's symptoms. *See, e.g.,* 20 C.F.R. §§ 404.1529(c)(3)(iv), 416.929(c)(3)(iv). The administrative law judge in this case made no findings concerning the impact, if any, of the claimed side effects on the plaintiff's residual functional capacity, perhaps because his reference to "disability" reports is to be taken as a rejection of the complaints of side effects. The commissioner's regulations promise careful consideration of such claims. Here, the plaintiff did not receive that. It is not the role of a reviewing court to guess at how an administrative law judge might have adjudicated the claim, or for the court or counsel for the commissioner to supply reasons for the adjudication after the fact. *See, e.g., Figueroa v. Secretary of Health, Educ. & Welfare*, 585 F.2d 551, 554 (1st Cir. 1978) ("At the very least, the administrative law judge should have made a finding on [the plaintiff's] claim regarding side effects, making it possible for a reviewing tribunal to know that the claim was not entirely ignored."). *See also Littlefield v. Astrue*, 2008 WL 648961 (D. Me. Mar. 5, 2008), at *5.

The problem in this case is compounded by the fact that the only evidence of a lack of side effects cited by the administrative law judge was the plaintiff's "disability reports." Record at 20. The only citation to the record in support of this reference is to Exhibit 7E, which is a "Questionnaire Addressing Pain" completed by the plaintiff on December 18, 2006. *Id.* at 164-66. At that time, he reported that he only took over-the-counter medications for his pain, that they did not relieve the pain, and that they did not cause any side effects. *Id.* at 165-66. As the plaintiff points out, Itemized Statement at 18-19, at the time of the complaints about side effects cited by the administrative law judge, specifically Exhibits 25F and 26F, which are dated September 7, 2007 (*id.* at 465) and September 19, 2007 (*id.* at 471), he was taking prescription

12

medications including Campral, Valium, Risperdal, and Paxil (*id*. at 461, 467), the known side effects of which include those of which the plaintiff complained, Itemized Statement at 20.

At oral argument, counsel for the commissioner pointed to an unsigned form which the index to the record dates June 12, 2007 and characterizes as "from Claimant," Record at [iii] & 181, which lists medications of Klonopin, Naprosyn, and Trazodone with no side effects. That the plaintiff earlier reported no side effects from different drugs does not make his reports of September 2007 invalid. Nor am I aware of any authority to support the assertion of counsel for the commissioner at oral argument that side effects are not sufficiently severe to require the attention of the administrative law judge unless a treating physician found it necessary to change the claimant's medications for that reason. The administrative law judge's treatment of this claim is insufficient. The claimant is entitled to remand on this basis.

## Conclusion

For the foregoing reason, I recommend that the commissioner's decision be **VACATED** and the case remanded for further proceedings consistent with this opinion.

### *NOTICE*

*A party may file objections to those specified portions of a magistrate judge's report or proposed findings or recommended decisions entered pursuant to 28 U.S.C. § 636(b)(1)(B) for which de novo review by the district court is sought, together with a supporting memorandum, within ten (10) days after being served with a copy thereof. A responsive memorandum shall be filed within ten (10) days after the filing of the objection.*

*Failure to file a timely objection shall constitute a waiver of the right to de novo review by the district court and to appeal the district court's order.*

Dated this 16th day of November, 2008.

/s/ John H. Rich III
John H. Rich III
United States Magistrate Judge